UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANGIE ANN COUSINEAU,

        Plaintiff,

v.                                                                                                  Case No. 18-C-857

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff Angie Ann Cousineau filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff contends that the administrative law judge's (ALJ) decision is flawed and requires remand because the ALJ failed to properly weigh the opinions of her rheumatologist. For the reasons that follow, the decision of the Commissioner will be reversed and remanded.

## BACKGROUND

Plaintiff, age 40 at the time, filed an application for a period of disability and disability insurance benefits on February 10, 2014, alleging disability beginning January 21, 2014. She listed Type I diabetes, fibromyalgia, arthritis, heart disease, hypothyroidism, gastroperesis, and Raynaud's disease as the conditions that limited her ability to work. R. 211. Her application was denied initially on April 21, 2014, and upon reconsideration on January 23, 2015. Plaintiff subsequently requested an administrative hearing before an ALJ, and on April 24, 2017, ALJ Peter Kafkas held a hearing. Plaintiff, who was appointed a representative, and a vocational expert (VE) testified.

At the time of her hearing, Plaintiff lived with her husband in a two-story house. R. 45. She testified that she lives on the first floor of her home but can walk up one flight of stairs. R. 46. Plaintiff worked at Oshkosh Corporation as the director of process improvement and was responsible for auditing. She went on medical leave due to some health problems. R. 50. Plaintiff testified that she could walk for 10 to 20 minutes and stand for 5 to 10 minutes before her conditions would begin bothering her. She reported that she has difficulty grasping with her hands and picking things up with her fingers. She attributed these difficulties to weakness and stiffness in her hands. R. 52. Plaintiff also reported getting lightheaded and dizzy when she stands up too quickly and when she walks. R. 53. She testified that she walks 10 to 20 minutes in the morning and for 5 to 10 minutes in the afternoon. *Id.* Plaintiff indicated she takes a nap in the morning and occasionally in the afternoon. R. 54.

Plaintiff also testified about her average day. She reported that she wakes up between 7:00 and 8:00 a.m. and eats breakfast. She then walks for 10 to 20 minutes to try to loosen up. After her walk, Plaintiff takes a nap, sits in her chair, and eats lunch. Plaintiff will occasionally read after lunch. Depending on the day, Plaintiff will take another nap. She then eats dinner, watches television, and goes to bed between 8:00 and 8:30 p.m. Plaintiff testified that she prepares simple meals and her husband prepares the rest. R. 60. He also does all of the household chores. R. 61.

In a written decision dated August 1, 2017, the ALJ concluded Plaintiff was not disabled. R. 10–20. Following the agency's five-step sequential evaluation process, the ALJ concluded at step one that Plaintiff met the insured status requirements of the Social Security Act on December 31, 2017, and did not engage in substantial gainful activity since January 21, 2014, the alleged onset date. R. 12. At step two, the ALJ found Plaintiff had the following severe impairments:

fibromyalgia, gastroparesis, and ischemic heart disease. *Id.* He concluded diabetes mellitus, hypertension, Raynaud's disease, and hypothyroidism are nonsevere impairments because they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to result in more than minimal work-related restriction for a continuous period of at least twelve months, are not expected to result in death, or have not been properly diagnosed by an acceptable medical source. R. 12–13. At step three, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal any listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13.

After reviewing the record, the ALJ concluded Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can "lift up to twenty pounds occasionally, lift or carry up to ten pounds frequently, stand or walk for approximately six hours per eight-hour work day, and sit for approximately six hours per eight-hour workday." R. 14. He also found she was capable of "frequent handling bilaterally" and "frequent fingering bilaterally." *Id.* The ALJ found at step four that Plaintiff was capable of performing past relevant work as a controller, project manager, and bank manager. R. 18. Based on these findings, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act. R. 20. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Plaintiff then commenced this action for judicial review.

## LEGAL STANDARD

The final decision of the Commissioner will be upheld if the ALJ applied the correct legal standards and supported her decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a

reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusion drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Plaintiff argues that the ALJ improperly evaluated the opinions of Dr. Eric Gowing, her rheumatologist. Dr. Gowing completed a number of medical source statements regarding Plaintiff's ability to work. In February 2014, Dr. Gowing opined that Plaintiff could not stand or walk, lift more than ten pounds, or sit for more than one to three hours a day. R. 421. He also noted that Plaintiff could not use her upper extremities for grasping, fine manipulation, or pushing and pulling and could occasionally bend, squat, climb, kneel, crawl, and reach above shoulder level. *Id.* Dr. Gowing further opined that Plaintiff was moderately limited in her ability to perform complex and varied tasks. *Id.*

In September 2014, Dr. Gowing noted that Plaintiff could not maintain gainful employment due to her musculoskeletal symptoms. R. 425. In March 2015, Dr. Gowing completed a physical capacities evaluation form. He checked boxes indicating that Plaintiff could occasionally lift up to five pounds, sit for two hours, and stand or walk for one-hour during a workday. R. 517–18. He opined that Plaintiff could use hands for simple grasping but not fine manipulation. *Id.* He also noted that Plaintiff was markedly limited in many mental areas of work including making simple work-related decisions and maintaining attention and concentration. He indicated that Plaintiff suffers from fatigue caused by fibromyalgia and Compezine use. R. 519. Dr. Gowing stated that Plaintiff's fatigue is disabling to the extent that it would prevent her from working full-time at even a sedentary position. *Id.*

In October 2015, Dr. Gowing noted that Plaintiff has a history of widespread pain and that she consistently exhibits pain on palpation in at least 11 of the 18 tender point sites consistent with fibromyalgia. He explained that Plaintiff suffers from fatigue, and that the fatigue is of a sufficient severity and persistence to preclude full-time work, even in a sedentary position. R. 531.

On December 7, 2015, Dr. Gowing submitted a letter to certify the extent of Plaintiff's disability. He reported that Plaintiff has consistently displayed symptoms of fibromyalgia for the past 12 years marked by chronic wide-spread pain, recurrent muscle spasms, and severe fatigue. He indicated that the fatigue is most disabling because it relates to her ability to maintain gainful employment. Dr. Gowing opined that Plaintiff is unable to maintain employment in any capacity due to fibromyalgia, mixed connective tissue disease, and underlying comorbid conditions, including diabetic gastroparesis. R. 626.

5

In September 2016, Dr. Gowing stated that Plaintiff could not maintain gainful employment in a sedentary position or maintain employment in any capacity. He opined that Plaintiff could lift up to 10 pounds, sit for 20 to 30 minutes, and stand for 5 to 10 minutes. Dr. Gowing noted that the ability to perform tasks without pain is extremely limited and that any type of repetitive motion is difficult to perform due to pain. R. 671. On March 8, 2017, Dr. Gowing expressed that he supported Plaintiff's application for disability and noted that she could not maintain gainful employment even in a part-time sedentary position. R. 692. The ALJ gave little weight to the opinions of Dr. Gowing.

Generally, the ALJ must give "controlling weight" to the medical opinion of a treating physician on the nature and severity of an impairment if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantial evidence." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); 20 C.F.R. § 416.927(c)(2); SSR 96-2p; *see also Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If the ALJ decides to give lesser weight to a treating physician's opinion, he must articulate "good reasons" for doing so. *Larson*, 615 F.3d at 749. Stated differently, although an ALJ is not required to give the treating physician's opinion controlling weight, he is still required to provide a "sound explanation for his decision to reject it." *Roddy*, 705 F.3d at 636 (citations omitted). "If the ALJ does not give the treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527. The ALJ is not required to "explicitly weigh every factor." *Henke v. Astrue*, 498 F.

App'x 636, 640 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 414–16 (7th Cir. 2008). Instead, the ALJ need only "sufficiently account for the factors." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

The ALJ gave Dr. Gowing's opinions little weight, finding that they were inconsistent with the overall evidence of record. He stated that Dr. Gowing's assessments that Plaintiff could lift only five or ten pounds, sit for two hours, and stand or walk for one hour are not supported by medical evidence demonstrating full strength, intact sensation, good range of motion, and a normal gait. R. 17. But the ALJ did not adequately explain how findings of normal range of motion, motor strength, and gait undermine Dr. Gowing's opinions on Plaintiff's limitations or are inconsistent with the other documented symptoms of fibromyalgia, including findings that Plaintiff tested positive for multiple tender points, widespread pain, and fatigue. *See Harvala v. Colvin*, No. 14-C-1176, 2015 WL 5177608, at *8 (N.D. Ill. Sept. 3, 2015) ("[N]ormal gait . . . is not inconsistent with persistent pain caused by the fibromyalgia. There is no evidence that fibromyalgia causes limitations in strength, range of motion, or an inability to step onto an examination table or walk. On the contrary, fibromyalgia is characterized by widespread pain, not by an inability to walk or a decrease in range of motion."). As a result, the ALJ failed to build the logical bridge from the evidence in the record to his conclusion that Plaintiff was not disabled.

This is also true with respect to Dr. Gowing's opinions regarding Plaintiff's grasping limitations. The ALJ explained that Dr. Gowing's assessments that Plaintiff could not use her hands for simple grasping or fine manipulation are not consistent with evidence that Plaintiff had full range of motion of the fingers and hands with no redness, warmth, swelling, or synovitis. Although the ALJ indicated that Dr. Gowing's opinions are not consistent with the overall evidence of record,

7

he did not discuss evidence from the medical records that are not supportive of his assessments. *See Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) ("An administrative law judge 'must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected.'" (quoting *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)). For instance, Dr. Kraemer noted that Plaintiff was not able to hold onto a piece of paper with Dr. Kraemer tugging on it, and it was also noted that Plaintiff had trouble dropping objects. The ALJ's failure to discuss relevant contrary evidence warrants remand in this case.

## CONCLUSION

For the reasons above, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to enter judgment forthwith.

**SO ORDERED** this  16th  day of September, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
